**Tawa AYENI, et al., Plaintiffs–Appellees,**

**v.**

**James MOTTOLA, Defendant–Appellant.**

**No. 1789, Dockets 94–6041(L), 94–6047.**

United States Court of Appeals, Second Circuit.

Argued April 8, 1994.

Decided Sept. 12, 1994.

Edward R. Cohen, Washington, DC (Frank W. Hunger, Asst. Atty. Gen., Barbara L. Herwig, Asst. Director, Department of Justice, on the brief), for defendant-appellant.

Henry H. Rossbacher, Los Angeles, CA (Tracy W. Young, Nanci E. Nishimura, Karen E. Widess, Rossbacher & Associates, Los Angeles, CA, Harry C. Batchelder, Jr., New York City, on the brief), for plaintiffs-appellees.

Before: NEWMAN, Chief Judge, PIERCE and LEVAL, Circuit Judges.

JON O. NEWMAN, Chief Judge:

The quest of television reporters for on-the-scene coverage of dramatic events and the interest of law enforcement agencies in

promoting their own image have combined to present for decision an appeal with important consequences for the right of privacy of those inside a home. The appeal arises because a Secret Service agent has been sued for inviting the crew of a TV news magazine into a private home to videotape a search. The principal issues are whether the agent's conduct in bringing a television crew into a home violates the Fourth Amendment rights of a mother and child within the home, and, if so, whether the agent is nonetheless shielded by qualified immunity from personal liability for damages. These issues arise on an interlocutory appeal by Special Agent James Mottola from the February 10, 1994, order of the District Court for the Eastern District of New York (Jack B. Weinstein, Judge) denying Mottola's motion to dismiss on qualified immunity grounds a suit brought by Tawa Ayeni and her son, Kayode Ayeni. *See Ayeni v. CBS, Inc.*, 848 F.Supp. 362 (E.D.N.Y. 1994). We conclude that the complaint alleges clear violations of the constitutional ban on unreasonable searches and seizures and that the agent's claim of qualified immunity was properly rejected. We therefore affirm.

### Facts

Plaintiffs' complaint, which we accept as true on this interlocutory appeal, alleges the following circumstances. On March 5, 1992, defendant Mottola received a warrant to search the Ayenis' apartment based upon information obtained from a confidential informant that Babatunde Ayeni was engaging in credit card fraud. Plaintiff Tawa Ayeni is Babatunde Ayeni's wife, and plaintiff Kayode Ayeni is their son. Neither plaintiff was suspected of any participation in the alleged fraudulent scheme. The warrant authorized Mottola and "any Authorized Officer of the United States" to enter the apartment and search for specified evidence of credit card fraud. At 6:00 p.m., Mrs. Ayeni and Kayode were home alone when six agents (four or five Secret Service agents and one or two Postal Service inspectors) arrived without a warrant, pounded on the door, and announced that they were police conducting an investigation. Agent Mottola was not pres-

ent in this first wave of agents, though he may have been in communication with them by radio. When Mrs. Ayeni, clad in a dressing gown, opened the door slightly, one agent pushed her in the chest to move her away from the door while two others pushed open the door, and the agents entered the apartment.

As several of the agents rushed into the bedroom and began searching inside the closets, Mrs. Ayeni asked to be shown a search warrant. One of the agents informed her that they were waiting for other people to bring the warrant; it is unclear whether the agents then stopped searching the premises. At 7:50 p.m., the agents were notified by radio, possibly by defendant Mottola, that the warrant had just been signed, and the agents commenced an aggressive search. Approximately 25 minutes later, Mottola arrived with the warrant. He was accompanied by three other Secret Service agents, and, particularly pertinent to this appeal, three members of a CBS television crew from the "Street Stories" weekly news magazine program.[1] The CBS crew operated a video camera and sound recording devices as they followed the agents during the search of the Ayeni home.

Mrs. Ayeni objected to the videotaping of herself and her son. She tried to avoid the camera by covering her face with a magazine. Kayode was crying and told his mother that he was frightened. When Mrs. Ayeni attempted to shield her son's face with a magazine, Mottola grabbed the magazine out of her hand, threw it on the floor, and told the plaintiffs to "shut up." Mottola or one of the other agents directed the camera crew to videotape Mrs. Ayeni's face. Mrs. Ayeni was taped while an agent questioned her to learn where her husband was and how she had paid for several expensive watches that the agent found. The camera crew also videotaped the agents searching the home and the personal effects of the Ayenis, including books, photographs, financial statements, and personal letters. During the search, the

---

1. The TV crew was led by a producer of the "Street Stories" program. It is not clear whether the members of the crew were CBS employees.

agents broke the leg of the plaintiffs' couch and a television stand.

The CBS crew videotaped the search for approximately 20 minutes, and then left the premises with several agents. The remaining agents completed the search and left at approximately 9:35 p.m., more than three hours after the initial entry. The only tangible item seized from the home was a photograph of the Ayeni family. CBS never broadcast any portion of the video footage.

Plaintiffs instituted a *Bivens* action against Agent Mottola, other agents, and CBS.[2] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Judge Weinstein denied Agent Mottola's motion to dismiss on grounds of qualified immunity, 848 F.Supp. 362, and Mottola brought this interlocutory appeal.

### Discussion

■ Mottola is entitled to judgment as a matter of law if he can demonstrate either that the rights claimed by the plaintiffs to have been violated were not "clearly established" as of the time of the search, or that it was "objectively reasonable" for him to believe that his acts did not violate those clearly established rights. *See Soares v. Connecticut,* 8 F.3d 917, 920 (2d Cir.1993); *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990).

### I. Fourth Amendment Claims

Bearing in mind the standards for dismissing a claim on qualified immunity grounds, we first examine whether clearly established Fourth Amendment law at the time of the search prohibited Mottola's actions in bringing the CBS TV crew into the Ayeni home, and, if so, whether it was objectively reasonable for Mottola to believe that his actions did not violate that clearly established law. Plaintiffs contend that Mottola's conduct exceeded Fourth Amendment limitations in three respects: (a) the Ayenis' privacy was invaded by the presence of unauthorized persons in their home, (b) the conduct of the search was excessively intrusive, and (c) some of the searching occurred before a warrant was issued.

### A. Entry by Unauthorized Persons

The contention that protected privacy within the Ayenis' home was violated by the presence of unauthorized persons is based on Fourth Amendment standards, somewhat reenforced by statutory requirements.

1. *Fourth Amendment standards.* The Fourth Amendment to the Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

■ The text of the Amendment makes clear that all searches must be "reasonable," and this is so even under the limited circumstances in which a warrant may be issued. The reasonableness requirement of the Fourth Amendment applies not only to prevent searches and seizures that would be unreasonable if conducted at all, but also to ensure reasonableness in the manner and scope of searches and seizures that are carried out, whether pursuant to a warrant or under "exigent circumstances." *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985).

■ The protection of privacy from encroachment by governmental officers is the " 'principal' object of the [Fourth] Amend-

---

**2.** CBS, originally named as a defendant in this action, has arrived at a confidential settlement with the plaintiffs. *See* Brief for Appellees at 2 n. 1. At the time of the proceedings in the District Court, the unknown agents and inspectors also sued in this action had not yet been served with a complaint; hence Mottola is the sole defendant for the purposes of this appeal. *See Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir.1980). The

ment."[3] The home has properly been regarded as among the most highly protected zones of privacy,[4] and "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection."[5] While incursions into private homes are permitted under certain limited circumstances in order to protect the public's interest in controlling crime, determinations regarding the necessity, location, scope, and conditions of such incursions are generally to be made by disinterested judicial officers, and not by the officers conducting the searches:

> The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

*Payton v. New York*, 445 U.S. 573, 586 n. 24, 100 S.Ct. 1371, 1380 n. 24, 63 L.Ed.2d 639 (1980) (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)).

■ Moreover, since the establishment of the exclusionary rule dating back to 1914 for federal officers, *see Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and to 1961 for state officers, *see Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, law enforcement personnel have been aware that, if their searches were not conducted in accordance with the requirements of the Fourth Amendment, they would be futile since any evidence discovered would be suppressed. During these many years, court decisions have repeatedly made clear that law enforcement officers conducting searches under a warrant are limited in their conduct to either (a) actions expressly authorized by the warrant,[6] or (b) such further actions as are impliedly authorized because they are reasonably related to accomplishing the search authorized by the warrant or accomplishing additional legitimate law enforcement objectives, such as insuring the safety of the searching officers and effectively responding as law enforcement officers to circumstances that might arise during the course of the search.[7]

With respect to express authorization, a warrant identifies not only the premises that

Government has since disclosed the names of the unknown agents.

**3.** *Soldal v. Cook County*, —— U.S. ——, ——, 113 S.Ct. 538, 545, 121 L.Ed.2d 450 (1992) (citing *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648–49, 18 L.Ed.2d 782 (1967), and *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)); *see also Winston v. Lee*, 470 U.S. 753, 758, 105 S.Ct. 1611, 1615, 84 L.Ed.2d 662 (1985).

**4.** *See Winston*, 470 U.S. at 761–62, 105 S.Ct. at 1617–18; *Payton v. New York*, 445 U.S. 573, 585, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"); *United States v. Berkowitz*, 927 F.2d 1376, 1387 (7th Cir.1991); *United States v. Winsor*, 846 F.2d 1569, 1579 (9th Cir.1988) (en banc).

**5.** *United States v. Martinez–Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084–85, 49 L.Ed.2d 1116 (1976); *United States v. Reed*, 572 F.2d 412, 422 (2d Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); *see also South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976) (less rigorous warrant requirements govern automobile searches

because the expectation of privacy with respect to automobile is significantly less than that relating to one's home or office); *United States v. Bonfiglio*, 713 F.2d 932, 935 (2d Cir.1983) ("[T]he warrant requirement of the Fourth Amendment protects the individual's right to privacy and society's interest in reasonable security and freedom from surveillance in that it severely limits an officer's right to thrust himself into an individual's home.").

**6.** *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004 n. 7, 29 L.Ed.2d 619 (1971) ("[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant...."); *see also United States v. Matias*, 836 F.2d 744, 747 (2d Cir.1988); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir.1985); *United States v. Heldt*, 668 F.2d 1238, 1260 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

**7.** *See, e.g., Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (detaining occupants while search is in progress); *United States v. Barlin*, 686 F.2d 81, 87 (2d Cir.1982) (limited search of individual on premises as self-protective measure).

may be searched and the items that may be examined or seized, but also *the officers who are authorized to participate in the search and seizure*. The warrant authorizing the search of the Ayeni home was directed to "James Mottola and any Authorized Officer of the United States." Mottola's affidavit, submitted with his warrant application, requested that "search warrants be issued to any Special Agent of the United States Secret Service to enter, with proper assistance," the Ayeni home to search for and seize various documents related to suspected credit card fraud. Neither document requests or permits the presence of a television camera crew, nor does either indicate that video and sound recording of any kind would be necessary. With respect to implied authorization, there is no claim that the presence of the CBS camera crew served any legitimate law enforcement purpose.

▆▆▆ Agent Mottola correctly asserts that there is no reported decision that expressly forbids searching agents from bringing members of the press into a home to observe and report on their activities. He therefore argues that there was no clearly established rule prohibiting such an act. The argument lacks merit. It has long been established that the objectives of the Fourth Amendment are to preserve the right of privacy to the maximum extent consistent with reasonable exercise of law enforcement duties and that, in the normal situations where warrants are required, law enforcement officers' invasion of the privacy of a home must be grounded on either the express terms of a warrant or the implied authority to take reasonable law enforcement actions related to the execution of the warrant. Mottola exceeded well-established principles when he brought into the Ayeni home persons who were neither authorized by the warrant to be there nor serving any legitimate law enforcement purpose by being there.[8] A private home is not a soundstage for law enforcement theatricals.

The unreasonableness of Mottola's conduct in Fourth Amendment terms is heightened by the fact that, not only was it wholly lacking in justification based on the legitimate needs of law enforcement, but it was calculated to inflict injury on the very value that the Fourth Amendment seeks to protect—the right of privacy. The purpose of bringing the CBS camera crew into the Ayenis' home was to permit public broadcast of their private premises and thus to magnify needlessly the impairment of their right of privacy.

▆▆▆ With respect to the second prong of the qualified immunity analysis, an objectively reasonable officer could not have concluded that inviting a television crew—or any third party not providing assistance to law enforcement—to participate in a search was in accordance with Fourth Amendment requirements. Contrary to Mottola's argument, "the very action in question" need not have "previously been held unlawful"; rather, the standard to defeat qualified immunity is that "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The contours of the Ayenis' rights were "sufficiently clear that a reasonable official [in Mottola's position] would understand that what he [was] doing violate[d] th[ose] right[s]." *Id.*

We therefore agree with Judge Weinstein (i) that the Fourth Amendment's prohibition on unreasonable searches forbade Mottola's action in bringing the CBS camera crew into the Ayenis' home, (ii) that the right of the Ayenis to be protected under the Fourth Amendment from an agent's bringing into their home persons not expressly nor impliedly authorized to be there, such as a television camera crew, was "clearly established" at the time of the search, and (iii) that Mottola could not with objective reasonableness have believed that his action was consistent with the Fourth Amendment.

---

8. *Bills v. Aseltine*, 958 F.2d 697 (6th Cir.1992), cited by the plaintiffs, lends support to the proposition that permitting the presence of a third party not assisting in a search may violate the Fourth Amendment. However, because that decision was rendered after the search at issue in this case, we do not—and need not—rely on it to conclude that the defendant's actions, as alleged, violated law that was clearly established prior to the search.

**2. Statutory Reenforcement of Unauthorized Persons Claim.** Though our rejection of Mottola's immunity defense rests on well-established Fourth Amendment standards, we find some reenforcement for our conclusion in Federal statutory law, 18 U.S.C. § 3105 (1988), which specifies who may and who may not be on private premises in connection with the execution of a search warrant. That section reads:

A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

18 U.S.C. § 3105.

■ This statute identifies those who may "serve" a search warrant—only authorized officers and those legitimately assisting the officers, but it has been construed to determine those who may "execute" a warrant. See *United States v. Wright*, 667 F.2d 793, 797 (9th Cir.1982); *United States v. Clouston*, 623 F.2d 485, 486 (6th Cir.1980); *United States v. Gervato*, 474 F.2d 40, 45 (3d Cir.1973). Though the statute is not determinative of the scope of the Fourth Amendment, it provides some basis for giving content to the Amendment's generalized standard of reasonableness.[9] Courts construing the reach of the Fourth Amendment in light of section 3105 have held that the presence of a third party who is *assisting authorized officers in their search* does not violate the Fourth Amendment's reasonableness re-

quirement. See *United States v. Clouston*, 623 F.2d at 486–87 (telephone company employees on premises in aid of officers); *United States v. Gambino*, 734 F.Supp. 1084, 1091 (S.D.N.Y.1990) (confidential informant assisting search); cf. *In re Southeastern Equipment Co. Search Warrant*, 746 F.Supp. 1563, 1577 (S.D.Ga.1990) (Department of Defense investigator assisting Customs Agent permitted by section 3105); *United States v. Schwimmer*, 692 F.Supp. 119, 126–27 (E.D.N.Y.1988) (computer expert assisting search permitted by section 3105).

■ As noted above, Mottola does not contend that CBS was assisting Mottola or any of the other officers in conducting a search. On the contrary, the officers were assisting CBS in producing a television show. Such conduct clearly violated section 3105.

Mottola argues that under the Supreme Court's decision in *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the violation of a *statute* is irrelevant for purposes of determining whether he is protected by qualified immunity against the claim that he violated the plaintiffs' *constitutional* rights. We disagree. First, we note that the plaintiffs are not suing for violation of section 3105. They seek damages for a violation of the Fourth Amendment, and they have pleaded that violation sufficiently to overcome an immunity defense, wholly apart from any limitations imposed by section 3105. The statute is relevant, not as a standard of liability, but as some guidance on the constitutional issue.

---

**9.** That the prohibitions of section 3105 may be considered in determining "reasonableness" under the Fourth Amendment is also indicated by the similar treatment the courts have accorded the requirements of the "knock and announce" statute, 18 U.S.C. § 3109 (1988). A majority of circuits that have considered the issue, including the Second Circuit, have concluded that the requirements of section 3109 coincide with the reasonableness requirements of the Fourth Amendment. See *United States v. Lalor*, 996 F.2d 1578, 1584 (4th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 485, 126 L.Ed.2d 436 (1993); *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir.1991); *United States v. Andrus*, 775 F.2d 825, 844 (7th Cir.1985); *United States v. Francis*, 646 F.2d 251, 257–58 (6th Cir.), cert. denied, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981); *United States v. Baker*, 638 F.2d 198, 202 & n. 7 (10th

Cir.1980). Several circuits that do not regard the requirements of section 3109 as coextensive with the Fourth Amendment have nonetheless recognized that the prohibitions are overlapping and serve similar interests. *United States v. Sagaribay*, 982 F.2d 906, 909 (5th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 160, 126 L.Ed.2d 120 (1993); *United States v. Nolan*, 718 F.2d 589, 600–02 (3d Cir.1983). Moreover, at least one of the circuits that does not consider section 3109 completely congruent with the Fourth Amendment has concluded that since the requirements are overlapping, an analysis as to whether the Fourth Amendment has been violated may at least *begin* with an inquiry into whether the statute has been violated. See *United States v. Stiver*, 9 F.3d 298, 302 (3d Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1115, 127 L.Ed.2d 425 (1994).

■ Second, we believe that the defendant reads *Davis* too broadly. In that case, the plaintiff, suing under 42 U.S.C. § 1983, claimed that the Florida Highway Patrol had violated his procedural due process rights by terminating him without a formal pre-termination or prompt post-termination hearing. *Davis,* 468 U.S. at 187, 104 S.Ct. at 3016.[10] The due process right to such a hearing had not been clearly established at the time of the plaintiff's dismissal. *Id.* at 187–88, 104 S.Ct. at 3015–16. The Supreme Court held that the plaintiff could not defeat the defendant's qualified immunity by relying on the Highway Patrol's separate violation of a personnel regulation that was unrelated to the due process claim. *Id.* at 188, 193–95, 104 S.Ct. at 3018. In so holding, the Court emphasized that the plaintiff "makes no claim that the [defendants'] violation of the state regulation ... *bears upon* the claim of constitutional right that [plaintiff] asserts under § 1983." *Id.* at 193, 104 S.Ct. at 3018 (emphasis added). In contrast, a violation of 18 U.S.C. § 3105 at least "bears upon" a claim under the Fourth Amendment.

## B. Excessive Measures During the Search

The complaint alleges several respects in which the search was conducted in an unreasonably intrusive manner. Some of these actions are those of Mottola or the agents under his direction. For example, the complaint alleges that Mottola grabbed a magazine out of Mrs. Ayeni's hand and told the plaintiffs to "shut up" when Mrs. Ayeni attempted to cover her son's face, and that the agents broke some furniture in the home. More serious are the allegations that the search was excessively intrusive by reason of the videotaping of Mrs. Ayeni, her son, and their private documents. The complaint alleges that the CBS crew—sometimes at the instruction of the officers—videotaped and recorded the plaintiffs themselves, in spite of the vigorous protests of Mrs. Ayeni and her efforts to cover her son's and her own face. The complaint also alleges that the CBS crew, following the agents during the search, videotaped the agents searching the interiors

of closets, drawers, and desks, and took close-up pictures of personal letters, family pictures, and personal banking and financial statements.

■ In contrast to searches for "physical objects whose relevance is more easily ascertainable," searches for documents involve at least a cursory review of innocuous and personal papers and effects. *See Andresen v. Maryland,* 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976). For this reason, "searches involving documents must be 'conducted in a manner that minimizes unwarranted intrusions upon privacy.'" *Matias,* 836 F.2d at 747 (quoting *Andresen,* 427 U.S. at 482 n. 11, 96 S.Ct. at 2749 n. 11). The pending case vividly illustrates how a search for documents can lead to the inspection of highly personal items unrelated to the purposes of the search. Here the intrusiveness of such inspection was aggravated by the fact that the needless viewing of private documents was done not only by agents conducting a search but also by unauthorized persons with no business being in the home at all.

■ The video and sound recordings were unnecessary to the purposes of the search—to discover material related to an alleged credit card fraud scheme. The Government makes no claim that the search was being videotaped for legitimate law enforcement purposes, such as to verify the location of seized items or to refute claims of improper conduct by the agents during the search. Instead, the purpose of the TV crew's intrusion into the Ayeni home was to seize images and sounds of the Ayeni home, and of the Ayenis themselves, that were intended for public viewing by television audiences across the country. We agree with the District Court that the video and sound recordings were "seizures" under the Fourth Amendment, and rendered the search far more intrusive than it needed to be. *See Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967) ("the Fourth Amendment governs not only the seizure of

---

10. The same principles of qualified immunity apply in section 1983 actions against state officials and *Bivens* actions against federal officials.

*See Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

tangible items, but extends as well to the recording of oral statements"); *id.* at 360–61, 88 S.Ct. at 516–17 (Harlan, J., concurring) ("electronic as well as physical intrusion into a place that is ... private may constitute a violation of the Fourth Amendment"); · *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 682–83, 5 L.Ed.2d 734 (1961). The law was also clear that a search of a home involves an incursion upon one of the most highly protected zones of privacy and that a search involving documents requires that officers "minimize unwarranted intrusions on privacy." All these Fourth Amendment requirements have been defined with "reasonable specificity." *See Soares,* 8 F.3d at 922.

In *Rivera v. United States,* 928 F.2d 592 (2d Cir.1991), the complaint had alleged that a search had been excessively intrusive and that officials had committed various acts of physical brutality against individuals who, like Tawa and Kayode Ayeni, were not the subjects of the criminal investigation as stated in the warrant. *Id.* at 598–600. In vacating the District Court's judgment that had found the officers' conduct objectively reasonable, we stated:

> Beyond th[e] general authority to detain persons and make limited security searches, ... there must be probable cause, or at least some degree of particularized suspicion, to justify further searches or seizures of individuals who are neither named in the warrant nor arrested as a consequence of the search.

928 F.2d at 606 (citing *Ybarra v. Illinois,* 444 U.S. 85, 91–94, 100 S.Ct. 338, 342–44, 62 L.Ed.2d 238 (1979)). We concluded that "the claims that ... property was unreasonably destroyed, and that physical treatment was excessively rough or intrusive, raised questions of fact." *Id.* at 607; *see also United States v. Becker,* 929 F.2d 442, 446 (9th Cir.),

*cert. denied,* —— U.S. ——, 112 S.Ct. 183, 116 L.Ed.2d 145 (1991). We also remanded on the qualified immunity issue, noting that whether defendants had a reasonable belief that "under the circumstances, their actions did not violate [Fourth Amendment] rights, also rests on disputed questions of fact." *Rivera,* 928 F.2d at 607.

■ In this case, there are similarly unresolved questions of fact. Among the issues that must be resolved at trial are not only the extent of physical force and intrusive measures employed during the search, but whether such measures were justified by the purposes of the search. *See* Akhil R. Amar, *Fourth Amendment First Principles,* 107 Harv.L.Rev. 757, 804 (1994) ("Greater intrusiveness requires greater justification."). The plaintiffs' allegations, if proved, may be sufficient for a fact-finder to conclude that the officers' conduct violated clearly established Fourth Amendment law. *See Rivera,* 928 F.2d at 606–07; *Tarpley v. Greene,* 684 F.2d 1, 9 (D.C.Cir.1982) ("destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment."). If the plaintiffs' Fourth Amendment rights were violated by the use of physical force and the intrusiveness of the search, it would still remain for the fact-finder to determine whether it was objectively reasonable for Mottola to believe that his conduct in this regard, under the circumstances, did not violate the plaintiffs' Fourth Amendment rights. *See Oliveira v. Mayer,* 23 F.3d 642, 649–50 (2d Cir.1994); *Rivera,* 928 F.2d at 607.[11]

■ We note, however, that the seizure of a photograph during the course of the search was permissible if the photograph was intended to be used later to identify the defendant, as Mottola claims. *Cf. Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535,

---

**11.** These issues regarding the extent of the use of physical force and the intrusiveness of the search are distinct from the issue of the presence of unauthorized persons discussed earlier in the this opinion; as to that issue the only question remaining for the jury is whether defendant Mottola played a role in permitting the CBS news crew to be present at the search. Because there are no unresolved material questions of fact as to whether Mottola is entitled to qualified immunity

regarding the invitation to CBS (Mottola does not contend, for example, that CBS was legitimately assisting in the search), the qualified immunity defense to that claim should not be submitted to the jury. *See Oliveira,* 23 F.3d at 649. Nor need the jury consider a qualified immunity defense to Mottola's liability for any aspect of the conduct of the TV crew since the unavailability of this defense to the claim based on the presence of the crew subsumes their conduct in the home.

1541–42, 75 L.Ed.2d 502 (1983) (plurality) (permitting seizure of relevant evidence under "plain view" doctrine during *warrantless* search); *United States v. Diecidue*, 603 F.2d 535, 559 (5th Cir.1979) (same), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980). Since Mrs. Ayeni's husband was the suspected perpetrator of the criminal activities that were the subject of the search, a single photograph of him for identification purposes would have been relevant evidence within the legitimate scope of the warrant.

## C. Entry and Detention Prior to Obtaining the Warrant

■ The plaintiffs allege that they were illegally detained and that their apartment was searched intermittently for nearly two hours before the warrant was signed by the Magistrate Judge. In *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the Supreme Court indicated that an officer who knows that others, in good faith, are in the process of obtaining a warrant may secure a residence from within and, when necessary, may detain its residents for a reasonable period in order to "preserve the status quo," without violating the Fourth Amendment's proscription against unreasonable *seizures*. *Id.* at 798, 104 S.Ct. at 3382 (1984); *see also United States v. Crespo de Llano*, 838 F.2d 1006, 1016 (9th Cir.1987); *cf. United States v. Berrett*, 513 F.2d 154, 155 (1st Cir.1975) (officers remaining in open garage until search warrant obtained were not conducting warrantless search since they did not exercise dominion over property in garage before warrant was executed). But the Court in *Segura*, distinguishing between a *search* and a *seizure*, and noting that a limited search had taken place before the warrant had been obtained, stated:

> The [Second Circuit] Court of Appeals affirmed the District Court's holding that there were no exigent circumstances to justify the warrantless entry into petitioners' apartment. That issue is not before us, and we have no reason to question the courts' holding that that *search* was illegal.

*Segura*, 468 U.S. at 798, 104 S.Ct. at 3382 (emphasis in original).[12] The Supreme Court thus left undisturbed this Court's holding that the entry and search that had occurred before the warrant was obtained, and in the absence of exigent circumstances, violated the Fourth Amendment. *See United States v. Segura*, 663 F.2d 411, 414, 417 (2d Cir. 1981), *limited on other grounds*, *United States v. MacDonald*, 916 F.2d 766, 772 (2d Cir.1990) (in banc) ("To the extent that *Segura* may be interpreted to extend this underlying rationale [that officers' conduct may not create exigent circumstances] beyond illegal conduct, we repudiate such an expansive approach."), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991); *see also United States v. Napue*, 834 F.2d 1311, 1326 (7th Cir.1987) (only exigent circumstances can justify an entry and search prior to obtaining a warrant). Hence, clearly established law prohibited entry and search of the Ayeni home prior to the issuance of the warrant, in the absence of exigent circumstances. Whether plaintiffs have any viable claim arising from their alleged detention, prior to issuance of the warrant, cannot be decided without fact-finding. We do not know at this stage precisely what restraint, if any, was imposed on the occupants, or whether any restraint exceeded the bounds of reasonableness.[13]

---

**12.** The principal holding in *Segura*, not relevant here, was that evidence obtained *after* the issuance of, and pursuant to, a valid warrant need not be suppressed, even where an illegal search took place prior to the issuance of the warrant. *Id.* at 814, 104 S.Ct. at 3390.

**13.** *Segura* validates only the metaphysical "seizure" of the contents of the apartment that the Court was willing to assume had occurred immediately upon the officers' unlawful entry; that "seizure" of contents, arising from the officers' exercise of dominion and control, was deemed reasonable under the circumstances. However, the Supreme Court had no occasion to review the holding of the District Court, affirmed by the Second Circuit, that the seizure of a person within the apartment was unlawful. It was that seizure that resulted in the suppression of evidence seized in a search incident to the arrest. Perhaps the rationale of *Segura* would permit minimal restraint upon bystander occupants of premises to prevent them from destroying evidence or otherwise interfering with a search, but it suggests no general authority to impose detention upon those for whom the Government lacks probable cause to arrest.

Mottola contends that whatever the state of the law regarding entry and search in advance of obtaining a warrant, he cannot be liable for damages on that ground since it is undisputed that he was not among the officers who entered the Ayeni home before the warrant was issued. However, the complaint, fairly construed, indicates that officers at the Ayeni home were communicating with unknown persons elsewhere, *see* Complaint at ¶¶ 28–29, and Tawa Ayeni's affidavit specifically alleges that the officers who were at her home prior to the issuance of a warrant were communicating with others by radio, *see* Tawa Ayeni Affidavit at ¶ 4. The search warrant itself provides some indication that Mottola may have been coordinating the search efforts, as the document specifically names only Mottola.

■ Hence, material issues of fact remain as to whether Mottola authorized, coordinated, or participated in either the *planning or the execution* of the initial warrantless entry into the Ayeni home. If so, the fact-finder must determine whether officers merely entered to "maintain the status quo," without initiating a search, while other officers were acting in good faith to obtain a warrant, *or whether, as the plaintiffs allege, the home was searched prior to the issuance of the warrant.* Finally, if the home was searched and the defendant seeks to justify such a warrantless search on exigent circumstances, the fact-finder should determine whether such *circumstances existed to justify* any warrantless search that occurred in this case.

## II. The Substantive Due Process Claim

■ The plaintiffs' contention that the defendant's conduct was so offensive as to "shock the conscience" and therefore violate Fifth Amendment substantive due process is unavailing. After *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and *Albright v. Oliver,* — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), it is doubtful that any plaintiff may pursue a Fifth Amendment substantive due process claim based on the same facts as alleged in a Fourth Amendment unreasonable search claim. In the context of an excessive force

claim arising in the course of an arrest, investigatory stop, or other seizure of a person, the Supreme Court has explained that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against *this sort of physically intrusive governmental conduct,* that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871 (emphasis added). More recently a four-member plurality generalized this observation by quoting it with the substitution of the words "a particular sort of government behavior" for the words "this sort of physically intrusive governmental conduct." *Albright,* — U.S. at ——, 114 S.Ct. at 813 (opinion of Rehnquist, C.J., with whom O'Connor, Scalia, and Ginsburg, JJ., join). Justice Souter, concurring in the judgment, appears to provide a fifth vote for the proposition that substantive due process is unavailable as a restraint on conduct regulated by the Fourth Amendment. *Id.* — U.S. at —— – ——, 114 S.Ct. at 819–22.

■ Even if any room remains for a substantive due process claim with respect to the conduct of a search and seizure, plaintiffs' complaint, while alleging conduct that may exceed Fourth Amendment reasonableness, does not allege conduct that "shocks the conscience" for Fifth Amendment purposes to the extent that it was not objectively reasonable for Mottola to believe that his actions were within such outer limits. *See, e.g., Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (substantive due process protects against Government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against action that is incorrect or ill-advised).

## Conclusion

The complaint sufficiently alleges Fourth Amendment violations to withstand a motion to dismiss based on qualified immunity. The order of the District Court is affirmed.