June DeBARI, Arthur DeBari, Gerard DeBari and Lawrence DeBari, Plaintiffs,

v.

TOWN OF MIDDLETON, NEW YORK; Village of Margaretville, New York; John Mathiesen; Walton Heley, Jr. and Carl Wallman, Defendants.

No. 97–CV–1422.

United States District Court, N.D. New York.

May 22, 1998.

Jacobs & Jacobs, Stamford, New York (Michael A. Jacobs, of Counsel), for plaintiff.

Whiteman, Osterman & Hanna, Albany, New York (D. Scott Bassinson, of Counsel), for defendants Town of Middleton, Mathiesen, Heley and Wallman.

McCabe and Mack, LLP, Poughkeepsie, New York (David L. Posner, of Counsel), for defendant Village of Margetville.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

This action, brought pursuant to 42 U.S.C. § 1983, arises from the demolition by defendants[1] of a building owned by plaintiffs. Plaintiffs claim a number of constitutional violations.

Defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing the Complaint in its entirety, and plaintiffs' cross-move to amend the Complaint. For the reasons that follow, defendants' motions for summary judgment are granted in part and denied in part, and plaintiffs' cross-mo-

tion to amend the Complaint is granted to the extent stated herein.

## I. BACKGROUND

On January 19, 1996, a winter storm swept across the State of New York, causing severe flooding and property damage in the Town of Middletown and the Village of Margaretville, both of which are located in Delaware County, New York.[2] As a result, by proclamation dated January 19, 1996, Alan Rosa, Town Supervisor for the Town of Middletown, declared a State of Emergency, pursuant to New York Executive Law, Article 2–B, effective immediately for the Town of Middletown. By proclamation dated January 19, 1996; Raymond Christensen, Chairman of the Delaware County Board of Supervisors, also declared a State of Emergency, pursuant to New York Executive Law, Article 2–B, effective immediately for the entire Delaware County.[3]

Following the issuance of her proclamation, Town Supervisor Rosa requested that engineers from the Department of State, State of New York, inspect certain buildings that had been damaged by the storm. On January 20 and 21, 1996, at the request of Rosa, Mark Blanke, P.E., Senior Engineer of the Department of State, inspected several buildings in the Village of Margaretville that had been damaged by flooding to determine their structural soundness. Accompanying Blanke during these inspections were the following local officials: Town Code Enforcement Officer and building Inspector Walton Heley, Jr., Town Fire Inspector Carl Wall-

---

**1.** The individual defendants have been sued in their official capacities only.

**2.** The facts contained in this section have been deemed admitted by the plaintiffs because their Rule 7.1 Statement in opposition to summary judgment fails to controvert the facts set forth in defendants' Rule 7.1 Statement. *See* Local Rule 7.1(f) of the Northern District of New York ("All material facts set forth in the statement served by the moving party shall be deemed admitted unless controverted by the statement served by the opposing party.").

**3.** In addition, by Executive Order dated January 22, 1996, State of New York Governor George Pataki, pursuant to New York Executive Law, Article 2–B, declared a State Disaster Emergen-

cy, effective January 19, 1996 for areas affected by the winter storm, which included Delaware County. The Executive Order further authorized state agencies to "assist those affected local governments and individuals in responding to and recovering from this disaster, and to provide such other assistance as necessary to protect the public health and safety." *See* Executive Order dated January 22, 1996.

On January 23, 1996, President Clinton declared the areas affected by the January 19, 1996 winter storm, including Delaware County, a major disaster pursuant to the Federal Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 *et seq.*

man and Town Deputy Code Enforcement Officer John Mathiesen.

One of the many buildings inspected was that of the plaintiffs (the "DeBari Building"), located on Bridge Street in the Village of Margaretville. Heley and Wallman accompanied Blanke on the inspection of the De-Bari Building. Prior to the flood, the DeBari Building had consisted of two connecting structures. The northeast structure was two stories in height, and the southwest portion of the building was one story. The flood, however, caused the northeast structure to shift from its foundation and become detached from the southwest portion. After inspection, Blanke concluded that the northeast rectangular portion of the DeBari Building was structurally unstable and should not be occupied. Heley and Wallman concurred with Blanke.

Thereafter, based upon the inspection and subsequent conclusions of the inspectors, Heley, in his capacity as Town Code Enforcement Officer and Building Inspector, condemned the northeast rectangular portion of the DeBari Building. Pursuant to New York Executive Law, Article 2–B, and the State of Emergency Proclamation dated January 24, 1996, Rosa ordered the demolition of the condemned portion of the DeBari Building.

Before commencement of the demolition, the Town directed personnel from Hubbell, Inc. ("Hubbell"), a company contracted by the Town of Middleton to demolish the unsafe portion of the DeBari Building, to assist plaintiffs in the removal of their personal property from the building. Hubbell sent a front-end loader to the DeBari Building for this purpose. Plaintiffs removed all of their personal belongings from the DeBari Building. At no time following the condemnation and prior to the demolition did Gerard De-Bari inform Town officials that he disagreed with the determination by the Town that the building should be condemned and demolished.

On January 29 and 30, 1996, the condemned portion of the DeBari Building was demolished and the demolition debris removed from the property.

On October 3, 1997, plaintiffs commenced the instant action. The Complaint—far from a paragon of clarity—asserts a claim under 42 U.S.C. § 1983 based upon the following:

> The defendants in acting under color of state [sic] acted in an unconstitutional fashion by violating the property rights, civil rights, and due process rights of plaintiffs and, in fact, committed unconstitutional prior restraint of the plaintiffs [sic] rights.

*See* Complaint, at ¶ 24.

## II. DISCUSSION

### A. Plaintiffs' Cross–Motion to Amend the Complaint

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." Such leave should be denied, however, when it would be futile, cause undue delay or prejudice, or when it is sought in bad faith. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In this case, plaintiffs' proposed Amended Complaint merely identifies with specificity the Constitutional amendments upon which their § 1983 action is based; it does not add any new causes of action nor otherwise alter the original Complaint. Notably, defendants' motions for summary judgment construe the original Complaint as asserting claims pursuant to the Constitutional amendments specifically identified in the Amended Complaint. As such, leave to amend is granted to the extent that plaintiffs' claims survive defendants' motions for summary judgment.

### B. Standard For Summary Judgment

The standard for summary judgment is well-settled. A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See id.* at 322, 106 S.Ct. 2548. The test for existence of a genuine dispute is whether a reasonable juror could find for the nonmoving party; that is, whether the nonmovant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs.,* 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations and quotations omitted).

It is with these standards in mind that the Court addresses defendants' motions for summary judgment.

### C. Defendants' Motions for Summary Judgment

Defendants assert that they are entitled to summary judgment because the actions complained of do not give rise to a violation of a right secured by "the Constitution and laws"—the *sine qua non* of any claim under 42 U.S.C. § 1983. Specifically, defendants contend that plaintiffs cannot, as a matter of law, establish a federal constitutional violation arising under substantive or procedural due process, the Takings Clause, or the Fourth Amendment with respect to the condemnation and demolition of the DeBari Building. Defendants also posit that they are entitled to absolute immunity under New York law.

### (i) Absolute Immunity under New York Executive Law Article 2–B

■ Turning first to defendants' argument for absolute immunity, defendants rely on Article 2–B of the New York Executive Law. That Article provides, in pertinent part:

> A political subdivision shall not be liable for any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of any officer or employee in carrying out the provisions of this section.

N.Y.EXEC.LAW § 25(5). Defendants' argument runs that the decision of the town officials to condemn and demolish the DeBari Building constituted discretionary acts entitling both the Town of Middleton and Village of Margaretville to immunity under § 25(5).

Defendants' argument for immunity need not detain us long. Section 25(5) provides immunity to political subdivisions for *discretionary* actions. The present § 1983 action, however, alleges a deprivation of rights secured by the federal Constitution. Fidelity to the Constitution is not a discretionary action; it is *mandatory. Rosas v. Brock,* 826 F.2d 1004, 1008 (11th Cir.1987). As such, § 25(5) provides no immunity to defendants in the case *sub judice.*

### (ii) Substantive Due Process

Turning next to plaintiffs' substantive claims, defendants assert that they are entitled to summary judgment on plaintiffs' claim of substantive due process. They are correct.

The Supreme Court, in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114, (1994) (plurality) (quotations omitted), held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See also Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995); *Ayeni v. Mottola*, 35 F.3d 680, 691 (2d Cir.1994), *cert. denied*, 514 U.S. 1062, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995).

In this case, there is an "explicit textual source of constitutional protection" that plaintiffs may rely—namely, the Fourth Amendment. Simply put, the Fourth Amendment protects against "unreasonable searches and seizures" by the government. U.S. CONST. AMEND. IV. A "seizure ... occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Illinois*, 506 U.S. 56, 60, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Where, as here, the government demolishes a building, a "seizure" results within the meaning of the Fourth Amendment. *See Thomas v. City of Dallas*, 1997 WL 560615, at *5 (N.D.Texas) (finding that demolition of residence constituted "seizure" within meaning of Fourth Amendment); *Suss v. A.S.P.C.A.*, 823 F.Supp. 181, 186 (S.D.N.Y.1993) (stating that forced entry and demolition of outer wall constituted Fourth Amendment seizure).

Furthermore, plaintiffs' contentions, at best, allege that defendants acted unreasonably in condemning and authorizing the demolition of the DeBari Building. Their claim thus fits squarely within the contours of the Fourth Amendment's protections. *See Soldal*, 506 U.S. at 61–62, 113 S.Ct. 538. Accordingly, because plaintiffs' claim is grounded in an explicit textual source, their substantive due process claim must be dismissed.

Even if the Court were to reach the merits of plaintiffs' substantive due process claim, plaintiffs have failed to raise an issue of material fact regarding the nature of defendants' conduct in this respect. To prove their claim of substantive due process, plaintiffs must establish that in depriving them of a property interest, defendants acted in an arbitrary or oppressive manner. *Crowley v. Courville*, 76 F.3d 47, 51 (2d Cir.1996); *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir.1992), *cert. denied*, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

Here, in support of their motions for summary judgment, defendants have submitted numerous affidavits explaining that the demolition of the DeBari Building resulted from an inspection and subsequent finding that the DeBari Building was structurally unsafe. *See* Wallman Aff. ¶ 4–8; Blanke Aff. ¶ 7–8; Rosa Aff. 5–8. Plaintiffs merely respond that they *"will prove"* that the defendants acted arbitrarily and oppressively. *See* Pl. Mem. at 6 (emphasis added). Plaintiffs also cite to paragraph 23 of their Complaint, which alleges that "defendants failed to exercise proper care and failed to act reasonably." *See* Complaint ¶ 23.

Plaintiffs' response, however, is insufficient to defeat summary judgment. FED.R.CIV.P. 56(e) provides, in pertinent part:

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Here, plaintiffs have set forth no evidence to support their claim of deprivation of substantive due process. The affidavits that have been submitted provide no evidence that defendants acted arbitrarily. Thus, on the present record, no jury could reasonably conclude that the defendants acted arbitrarily, oppressively, or in a conscience-shocking manner in

condemning and authorizing the demolition of the DeBari Building.

Accordingly, plaintiffs' substance due process claim is without merit.

### (iii) Procedural Due Process

Defendants next seek summary judgment on plaintiffs' claim of procedural due process.

 Fourteenth Amendment procedural due process generally requires a pre-deprivation hearing before property rights can be terminated. *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 298–300, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). "It has long been recognized, however, that authorized agents may proceed without providing pre-deprivation hearings when an emergency situation necessitates quick action or makes it impracticable to provide a meaningful hearing, so long as the State provides 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *Catanzaro v. Weiden,* 140 F.3d 91, 1998 WL 122393, at *2 (2d Cir. March 17, 1998) (quoting *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

In the present case, defendants argue that, because the DeBari building presented an imminent danger to public safety, quick action was required, and plaintiffs are entitled to only post-deprivation remedies. They are wrong.

Defendants' argument erroneously assumes the absence of a factual dispute with respect to whether an emergency circumstance necessitated the demolition of the DeBari Building. This assumption is based on the misunderstanding that the existence of a state of emergency necessitated the immediate demolition of the DeBari Building. Though defendants make much of the fact that plaintiffs have admitted that at the time of demolition, Delaware County was under a state of emergency resulting from the winter storm, this admission does not address whether the state of emergency necessitated the quick demolition of the DeBari Building. As to this point, plaintiffs have submitted the affidavit of Damon Steward, a site excavator, who opines that the DeBari Building was

structurally sound. *See* Steward Aff. ¶ 5. Similarly, the affidavit of Richard Fairburn states that the DeBari building was not in danger of collapse. *See* Fairburn Aff. ¶ 9. Thus, although there existed a state of emergency, questions of material fact remain whether this necessitated the immediate demolition of the DeBari Building.

As noted recently by the Second Circuit, "'[t]he existence vel non of an emergency' is an issue of material fact that must be considered.... [W]here the plaintiffs contest the existence of the emergency, we would be remiss to uphold a grant of summary judgment." *Catanzaro,* 140 F.3d 91, 1998 WL 122393, at *2 (quoting *Burtnieks v. City of New York,* 716 F.2d 982, 988 (2d Cir.1983)); *see also Heidorf v. Town of Northumberland,* 985 F.Supp. 250, 258 (N.D.N.Y.1997) (denying defendants' motion for summary judgment on plaintiff's procedural due process claim because there existed a factual question whether an emergency existed such to require demolition of church).

Accordingly, because there exists an issue of material fact whether emergency circumstances required the immediate demolition of the DeBari Building, plaintiffs' procedural due process claim must stand.

### (iv) Takings Clause

Defendants next seek summary judgment on plaintiffs' claim under the Takings' Clause. Plaintiffs, in turn, offer no rebuttal argument.

 This is not surprising, as plaintiffs claim under the Takings Clause is not ripe. "To state a takings claim under section 1983, a plaintiff must show (1) a property interest (2) that has been taken under color of state law (3) without just compensation." *Frooks v. Town of Cortlandt,* 997 F.Supp. 438, 452 (S.D.N.Y.1998). Assuming, without deciding, that the demolition of the DeBari Building constituted a "taking," plaintiffs "must first seek compensation from the state if the state has a 'reasonable, certain and adequate provision for obtaining compensation.'" *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 379–80 (2d Cir.1995), *cert. denied,* — U.S. ——, 117 S.Ct. 50, 136

L.Ed.2d 14 (1996) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)); *see also Frooks*, 997 F.Supp. at 453 (stating that "a 'taking' is not 'without just compensation' under section 1983 unless a plaintiff has exhausted all state remedies that may provide just compensation"). The State of New York has established remedies for just compensation claims. *See* EDPL § 101 *et seq.*

Here, plaintiffs have neither alleged that they have pursued state remedies nor shown that these state procedures are inadequate. Therefore, their claim under the Takings' Clause must be dismissed without prejudice as premature.

### (v) Fourth Amendment

Lastly, defendants seek summary judgment on plaintiffs' claim under the Fourth Amendment.

Whether the Fourth Amendment is violated depends upon whether the seizure was "reasonable." *See, e.g., Soldal*, 506 U.S. at 61–62, 113 S.Ct. 538. Though the test of reasonableness "is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), it generally requires a "careful balancing of government and private interests." *Soldal*, 506 U.S. at 71, 113 S.Ct. 538 (quotations omitted); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 66, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

In the present case, defendants assert that, as a matter of law, the condemnation and subsequent demolition of the DeBari Building was entirely reasonable under the circumstances.[4] They point out that a state of emergency had been declared as a result of a winter storm; that the storm caused severe flooding; that state engineers determined the DeBari Building to be structurally unsafe; and that defendants never explicitly objected to the demolition of the DeBari Building.

Although they may be correct, this issue cannot be resolved on summary judgment.

Plaintiffs have countered with affidavits that the defendants hastily sought demolition of the DeBari building and that, in fact, the building was structurally sound and not in danger of collapse. This presents the Court with a material question of fact regarding the reasonableness of defendants' actions.

Accordingly, plaintiffs claim Under the Fourth Amendment must stand.

### III. CONCLUSION

For the reasons stated, defendants' motions for summary judgment are granted insofar as they seek to dismiss the claims of plaintiffs based upon substantive due process and the Takings Clause; the motions are denied in all other respects. Plaintiffs' cross-motion to amend the Complaint is granted with respect to their surviving claims.

**IT IS SO ORDERED.**

---

4. Plaintiffs have not disputed that they removed all of their personal belongings prior to demolition of the DeBari Building. Thus, those interests are not at issue.