Merle AVENSON and Jean Avenson, Plaintiffs,

v.

Lesley ZEGART, Minnesota Humane Society, Gary A. Mills, Larry Johnson, and Dr. Alan Olander, Defendants.

Civ. No. 6–83–903.

United States District Court, D. Minnesota, Sixth Division.

Jan. 17, 1984.

Rodney J. Olson, Lind & Olson, Minneapolis, Minn., for plaintiffs.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., Brad P. Engdahl, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants Zegart and Minnesota Humane Society.

Thomas Athens, Arvensen, Donoho, Lundeen, Hoff, Svingen & Athens, Fergus Falls, Minn., for defendant Olander.

John T. Chapman, Arthur, Chapman & Michaelson, Minneapolis, Minn., for defendants Mills and Johnson.

## MEMORANDUM AND ORDER

MAC LAUGHLIN, District Judge.

This matter is before the Court on the defendants Lesley Zegart and the Minneso-

ta Humane Society's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs allege a cause of action pursuant to 42 U.S.C. § 1983 for deprivation of their fourth amendment right against unreasonable searches, and fourteenth amendment right to equal protection of the law. They also allege a number of causes of action pursuant to state law tort theories.[1]

FACTS

■ Plaintiffs operated a dog breeding business in Hubbard County, Minnesota, near the town of Park Rapids. In March of 1982 Zegart, then executive director of the Minnesota Humane Society,[2] was investigating dog breeding businesses in order to determine who was operating "puppy mills" in Minnesota. A "puppy mill" is a dog breeding operation in which the health of the dogs is disregarded in order to maintain a low overhead and maximize profits.

As part of his investigation of plaintiffs' dog breeding business, Zegart went to the Hubbard County Sheriff's Department. On March 26, 1982, Zegart and the defendant Hubbard County Deputy Sheriff Gary Mills drove to plaintiffs' rural property. The purpose of their visit was to inform plaintiffs that the Minnesota Humane Society had received complaints about plaintiffs' dog breeding business and to offer plaintiffs an opportunity to voluntarily cooperate with an investigation. Affidavit of Lesley Zegart, at 2. There were no gates, other structural impediments, or "no trespassing signs" at the entrance to plaintiffs' property. Mills and Zegart drove up plaintiffs' driveway and parked the sheriff's car on the driveway at the edge of an open area. Id. at 3.

Mills knocked on the door of plaintiffs' house to see if the plaintiffs were home. Meanwhile, Zegart got out of the sheriff's car and remained next to the car. From this vantage point, Zegart observed a fenced lot containing approximately 8 dogs. Zegart also observed an overhead light burning in a large barn across the open area from the sheriff's car.

After knocking at the door of plaintiffs' house and finding nobody home, Mills returned to the car. Zegart told Mills about the light in the large barn, and they both went to the barn to see if the plaintiffs were there. As they approached the open entry of the large barn, Zegart observed a number of dogs with mange inside the barn.[3] Zegart and Mills stayed in the entryway of the barn for about three minutes, and each took one or two steps through the open entryway into the barn. Neither Zegart nor Mills removed anything from plaintiffs' property, or entered any fenced or secured areas. Mills and Zegart continued to call for plaintiffs while going to and from the barn, but could not locate the plaintiffs or any other person on the premises. Id. at 3–5.

Based upon their observations, Mills and Zegart obtained a search warrant for plaintiffs' property. Plaintiffs allege that before executing the search warrant defendants Mills and Hubbard County Sheriff Larry Johnson told various representatives of the media about the warrant. On March 30, 1982, Zegart and Mills, along with defendant Dr. Alan Olander, a veterinarian, and other members of the sheriff's department went to plaintiffs' property in order to execute the search warrant. Various representatives of the media were also on plaintiffs' property, and Mills did not remove the media representatives from plaintiffs' property when plaintiffs requested that he do so. Certain of the defendants proceeded to remove a number of the most seriously ill dogs, some of which were later destroyed.

---

1. The state law causes of action include conversion, loss of business opportunity, intentional and/or negligent infliction of emotional distress, defamation, abuse of process, malicious prosecution and false arrest.

2. Zegart was the executive director of the Minnesota Humane Society from 1980–1982.

3. Mange is a highly contagious skin disease caused by mites which results in acute dermatitis and which, if not treated, may be fatal.

Subsequent to the execution of the search warrant and removal of the dogs, plaintiffs were arrested and charged with five counts of animal abuse. All charges were later dismissed by the prosecuting attorney for Hubbard County.

Plaintiffs brought this action claiming that Zegart and Mills' initial visit to the property was an unreasonable search in violation of the fourth amendment and that the defendants' failure, upon plaintiffs' request, to remove the media representatives during the execution of the search warrant violated plaintiffs' fourteenth amendment right to equal protection of the law. Plaintiffs also allege a number of causes of action pursuant to state law tort theories. They seek $500,000 in actual damages and $500,000 in punitive damages.

DISCUSSION

█ A defendant is not entitled to summary judgment unless the defendant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt and unless the nonmoving party is not entitled to recover under any discernible circumstances. *E.g., Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Unlaub Co. v. Sexton,* 568 F.2d 72, 76 (8th Cir.1977). The nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981).

█ The plaintiffs' lawsuit is founded on 42 U.S.C. § 1983, a portion of the historic Civil Rights Act of 1871. Section 1983 does not create a federal cause of action for every injury caused by official action.

Rather, section 1983 provides a federal remedy only for actions taken under color of state law, that deprive citizens of their federal constitutional or statutory rights. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Thus, the threshold question in this case is whether the plaintiffs have been deprived of any federal constitutional or statutory right.

█ The plaintiffs first contend that Zegart and Mills' initial visit to the property violated the plaintiffs' fourth amendment right to be free from unreasonable searches. In order for an intrusion to reach constitutional dimensions, a person must have exhibited an actual, subjective, reasonable expectation of privacy in the area searched. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *United States v. Knotts,* 662 F.2d 515, 518 (8th Cir.1981), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982). As a matter of law, the Court finds that the plaintiffs exhibited no such expectation of privacy in the premises at issue. It is undisputed that there was no gate or "no trespassing" sign at the entrance to the plaintiffs' property. The United States Court of Appeals for the Eighth Circuit has ruled, upon almost identical facts, that a property owner has no reasonable expectation of privacy in such a situation. In *United States v. Ventling,* 678 F.2d 63 (8th Cir.1982) (per curiam), the court held that the absence of a gate and a "no trespassing" sign at the entrance to a rural South Dakota property indicated that visitors could lawfully enter the property along a driveway during daylight hours to contact the occupants for a lawful request. 678 F.2d at 66. As in *Ventling,* in this case defendants Zegart and Mills entered plaintiffs' property during daylight hours for the lawful purpose of informing plaintiffs of the animal cruelty laws. In doing so, they did not violate any reasonable expectation of privacy of the plaintiffs'. *See also United States v. Messerly,* 530 F.Supp. 751, 754–55 (D.Mont.1982) (police officer who in performing his duty enters upon

private property to ask the occupant preliminary questions does not commit an illegal search). Given the rural setting, it was also reasonable for the defendants, upon not finding plaintiffs in their house, to approach the plaintiffs' lighted, open barn, and to observe the contents thereof, which were in plain view. Accordingly, the Court finds that defendants Zegart and Mills' limited entry onto plaintiffs' property to ask preliminary questions did not constitute a violation of plaintiffs' fourth amendment rights.

The plaintiffs also contend that the defendants' conduct while executing the search warrant deprived them of equal protection of the law. In order to state a colorable violation of the equal protection clause, a plaintiff must assert invidious, class-based discrimination. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). Plaintiffs have failed to establish a valid equal protection claim pursuant to the fourteenth amendment since they do not allege that they are members of a discrete and insular minority or that they were treated differently from similarly situated individuals. *See* 15 Am.Jur.2d *Civil Rights* §§ 7, 286 (1976).

While the plaintiffs may have valid causes of action under state tort law, this case does not involve a deprivation of federal constitutional or statutory rights.[4] Since there are no valid federal claims before the Court, and since complete diversity does not exist among the parties, the Court lacks subject matter jurisdiction over the plaintiffs' remaining state law claims.[5] *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

Accordingly, IT IS ORDERED that this case be dismissed without prejudice to the plaintiffs' right to assert their state law causes of action in the appropriate forum.

---

**4.** Consequently, the Court finds it unnecessary to address the defendants Zegart and Minnesota Humane Society's immunity defenses.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**5.** Plaintiffs have adequate remedies available in state court on their state law tort theories to recover any losses they might have incurred.