Tawa **AYENI** and Kayode Ayeni, a minor, by Tawa Ayeni, his mother and natural guardian, Plaintiffs,

v.

**CBS INC.,** a New York Corporation, Meade R. Jorgensen, James Mottola, Seven Unknown Special Agents of the United States Secret Service and Two Unknown Postal Inspectors of the United States Postal Service, Defendants.

No. CV 93–0957.

United States District Court, E.D. New York.

April 7, 1994.

---

1. Federal common law is binding on both procedural and substantive issues in non-diversity actions.

Rossbacher & Associates by Henry H. Rossbacher, Tracy W. Young, Nanci W. Nishimura, and Karen A. Widess, Los Angeles, CA, Harry C. Batchelder, New York City, for plaintiff.

Douglas P. Jacobs, Madeleine Schachter, New York City, for defendants CBS Inc. and Meade R. Jorgensen.

Frank W. Hunger, Asst. Atty. Gen., Helene M. Goldberg, Director, Torts Branch, Stephen F. McGraw, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendant James Mottola.

## AMENDED MEMORANDUM

WEINSTEIN, District Judge.

This case raises grave issues of the right to privacy in the home, free from the intruding eye and ear of a private broadcaster's television camera when: 1) access of the television crew was compelled by government officials without consent of the householder; 2) the officials had themselves obtained consentless entry, ostensibly by means of a search warrant; 3) the officials were not being aided in their search by the television crew; 4) the television crew was present only for proprietary reasons—i.e. potential profit to the television broadcaster; and 5) the television crew took from the home for the purpose of broadcasting them to the world at large, pictures of intimate secrets of the household, including sequences of a cowering mother and child resisting the videotaping.

The government and the broadcaster do not now contest the claim that serious psychic harm was suffered by the mother and child. Rather, they argue that this action against United States Treasury Agent, James Mottola, who allegedly arranged for the CBS crew's entry; CBS Inc., the broadcaster; and Meade R. Jorgensen, the CBS producer in charge of the crew, must be dismissed on the ground that they are immune from suit.

For the reasons indicated below this motion is denied. A prima facie gross violation of plaintiffs' clear constitutional rights has been pleaded against the government official. At the very least, plaintiffs are entitled to discovery in order to determine whether there was any justification for this intrusion of CBS into their home with the aid of a government official. The motion of CBS must be denied for this reason and, in addition, because a private broadcaster cannot cloak itself in immunity of a government official under the facts of this case.

### I.  *Facts*

The complaint alleges:

On March 5, 1992, Agent Mottola obtained a search warrant based upon information provided by a confidential informant regarding Mr. Babatunde Ayeni's involvement in a credit card fraud operation. He is plaintiff Tawa Ayeni's husband and plaintiff Kayode Ayeni's father. The warrant authorized Agent Mottola and other government agents to enter the plaintiffs' apartment to search for:

> quantities of fraudulently obtained credit cards, lists of names and account numbers for such credit cards, credit card receipts, credit card applications, false identification documents, cash, correspondence, checkbooks, bank records, and U.S. Postal Service change of address form.

(Am.Compl.P. 24.)

Neither Mrs. Ayeni nor Kayode was under investigation for any illegal activity. At approximately 6:00 p.m. on March 5, 1992, six agents (four or five secret service agents and one or two postal inspectors) arrived at the Ayenis' three bedroom residence. Mrs. Ayeni and her son were home alone. The agents announced that they were police conducting an investigation and wanted to ask questions. When Mrs. Ayeni, clothed only in a dressing gown, cracked opened the door, the agents pushed into the apartment.

At approximately 8:15 p.m., Agent Mottola entered the apartment with three additional agents and a CBS news crew, including Meade R. Jorgensen, a camera operator, and a sound technician. Jorgensen is employed

by CBS News as a producer of "Street Stories," a weekly television news magazine. The crew was never identified as CBS employees. "Mrs. Ayeni believed that the CBS camera crew and defendant Jorgensen were part of the team executing the warrant." (Am.Compl.P. 29.)

Mrs. Ayeni objected to the presence of the camera. She asked why the men were videotaping. Kayode sat beside his mother on the couch crying. Mrs. Ayeni repeatedly requested that her picture not be taken and attempted to cover her face and that of the boy.

The CBS crew followed and taped the agents as they searched the apartment and the Ayeni's belongings. They took close-up pictures of the interiors of closets, personal letters, family pictures, and even of a homey maxim on the wall. (Am.Compl.P. 35 and videotape.) Throughout the search, Jorgensen questioned an agent wearing a microphone. In the foyer of the Ayeni apartment, the CBS crew interviewed this agent to determine the *modus operandi* of people who commit credit card frauds and the tools of their trade. During this sequence of the tape, the agent "implied the complicity of other residents of the Ayeni apartment." (Am.Compl.P. 37.)

While CBS taped her, the agents questioned Mrs. Ayeni regarding her husband's whereabouts and objects in the apartment. The only material seized from the apartment was a family photograph of the Ayenis, also taped by CBS.

After about 20 minutes the CBS crew left the premises with several agents. It videotaped one of the agents expressing disappointment that no evidence of credit card fraud had been found.

Plaintiffs contend that CBS and Jorgensen had an "agreement" with the Secret Service to enter the apartment. (Am.Compl.P. 30.) They assert that "defendants Jorgensen and CBS, individually and through their agents, servants and employees, were acting with the implied permission and consent of the United States Secret Service, Department of the Treasury and United States Postal Service." (Am.Compl.P. 22.) The complaint states:

CBS also claims to have accompanied the Secret Service furthering the execution of the search in plaintiffs' apartment under the imprimatur of the official warrant and through the auspices of its "confidential informant," one of the Unknown Special Agents who participated in the search of the Ayeni apartment. (Am.Compl.P. 31.)

## II. *Law*

### A. *Qualified Immunity of Agent Mottola.*

■ Government officials performing a discretionary function are immune from liability from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person should have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or if it was objectively reasonable for the officials to believe that their acts did not violate those clearly established rights. *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990).

■ Inquiry into whether a right is clearly established cannot stop at a generalized level of fact. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). An evaluation of the state of the law at the time of the official action in light of the particular factual circumstances of the case is required. *Id.* "The 'contours' of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n light of the preexisting law the unlawfulness must be apparent." *Id.*

■ To determine whether a right was clearly established at the time defendant Mottola acted, the court must consider:

1) whether the right in question was defined with "reasonable specificity"; 2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and 3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Soares v. Connecticut,* 8 F.3d 917, 922 (2d Cir.1993).

To determine whether an agent is immune from suit, the court must determine whether, at the time of the search, it was clearly established that his actions constituted an unreasonable search and seizure under the Fourth Amendment. The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment protects the right of private citizens to be free from unreasonable intrusions by government officials into areas where they have a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). The home is the clearest example of such an area. The amendment has been interpreted broadly to place a number of restrictions on the government's ability to enter the home. *United States v. Sanusi,* 813 F.Supp. 149, 156–59 (E.D.N.Y.1992). Protections of the Constitution not only guarantee that the government shall not intrude into the privacy of a home without good cause, *Steagald v. United States,* 451 U.S. 204, 212–16, 101 S.Ct. 1642, 1647–50, 68 L.Ed.2d 38 (1981); *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980), but it also ensures that when the government does enter that the interruption of privacy is minimized. *Marron v. United States,* 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 231 (1927); *Dale v. Bartels,* 732 F.2d 278, 284–85 (2d Cir.1984).

The search must be closely tailored to the purpose of the warrant. For example, it may not be unreasonably destructive of property. *See, e.g., United States v. Becker,* 929 F.2d 442, 446 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 183, 116 L.Ed.2d 145 (1991); *Tarpley v. Greene,* 684 F.2d 1, 9 (D.C.Cir.1982). Agents may only search in areas that could reasonably contain the items specified in the warrant. *See, e.g., United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Those searching may not remain on the premises for an unreasonable length of time after the search is complete. *See, e.g., United States v. Corrado,* 803 F.Supp. 1280, 1285 (M.D.Tenn.1992). *See also* 2 Wayne R. LaFave, *Search and Seizure* § 4.10(d) (2d ed. 1987). Limitations on the scope of the intrusion are essential because of the great power wielded by government agents who enter a home with a warrant.

Where private citizens trespass and invade an individual's right to privacy, the individual has practical remedies such as locking the door or calling the police. If an intruder enters without permission intending to remove something without the right to do so, he commits a tortious trespass, *see* N.Y. Penal Law § 140.05, and criminal burglary. *See* N.Y. Penal Law § 140.20. By contrast, an official with a claim of a warrant authorized search cannot be resisted by the householder.

[O]ne who demands admission under a claim of federal authority stands in a far different position. The mere invocation of federal power by a federal law enforcement officer will normally render futile any attempt to resist unlawful entry or arrest by resort to the local police; and a claim of authority to enter is likely to unlock the door as well.

*Bivens v. Six Unknown Agents,* 403 U.S. 388, 394, 91 S.Ct. 1999, 2003, 29 L.Ed.2d 619 (1971) (citations omitted).

No case law has been cited specifically holding that an agent who allows a private citizen into a home to permit that person to photograph for non-governmental purposes during the execution of a search warrant is in violation of the Constitution. *Cf. Bills v. Aseltine,* 958 F.2d 697, 705 (6th Cir.1992) (whether allowing a private person not assisting with search to photograph premises was an unreasonable search is a jury question); *Smith v. Fairman,* 98 F.R.D. 445 (C.D.Ill. 1982) (photographing by press of prisoner in cell without permission is a violation); *but cf. Fullman v. Graddick,* 739 F.2d 553, 560 (11th Cir.1984) ("search of plaintiff's premises which was filmed and later published by the

local media," but no indication that the official admitted the media and issue of photographing not discussed).

In a case such as the instant one involving fundamental constitutional principles, the law does not require that the court "point to precedent which is factually on all-fours with the case at bar." *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir.1987). Rather, "[i]t suffices that the [agent] be aware of general well-developed legal principles." *Id. See also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir.1994).

Section 3105 of Title 18 provides that a person not specifically authorized by a search warrant may not participate in a search unless he is aiding the officer authorized by the warrant. The provision reads as follows:

> A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, *but by no other person, except in aid of the officer on his requiring it,* he being present and acting in its execution.

18 U.S.C. § 3105 (emphasis added). Section 3105 was enacted as a codification of the Fourth Amendment requirements for lawful searches and seizures. The wording was used in earlier statutes governing search warrants. *See* The National Prohibition Act, Title II, § 2, 41 Stat. 305, 308 (1919); Espionage Act, Title XI, § 7, 40 Stat. 217, 229 (1917).

The statute has been restrictively construed in light of its constitutional basis. *See, e.g., Bills v. Aseltine,* 958 F.2d at 706 (security guard not aiding in the search was not lawfully on premises); *United States v. Clouston,* 623 F.2d 485, 486–87 (6th Cir.1980) (telephone company employee can assist in search); *In re Southeastern Equip. Co. Search Warrant,* 746 F.Supp. 1563, 1577 (S.D.Ga.1990) (Customs Agent has the right to ask Department of Defense investigator to assist in search); *United States v. Gambino,* 734 F.Supp. 1084, 1091 (S.D.N.Y.1990) (confidential informant may assist in search); *United States v. Schwimmer,* 692 F.Supp. 119, 126–27 (E.D.N.Y.1988) (computer expert may assist in search).

Congress—as well as the courts and the President—has the power and the responsibility to interpret the Constitution in legislating. *Cf.* Laurence H. Tribe, *American Constitutional Law,* § 5–1 (2d ed. 1988). Courts assume that statutes effectuating or executing constitutional mandates were adopted with this obligation in mind. Statutes as well as case law can thus be relied upon in determining whether a constitutional right is clearly established.

■■■■■ Taking photographs is a "seizure" within the meaning of the Fourth Amendment. *See United States v. Villegas,* 899 F.2d 1324 (2d Cir.), *cert. denied,* 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990) (taking photographs is a seizure of an intangible similar to tapping a telephone line in that they are both seizures of information). In some circumstances courts have held that seizures of information, though not specifically delineated in a warrant, are constitutional under the "plain view" doctrine. *See Bills v. Aseltine,* 958 F.2d at 707 (photographs of areas in "plain view" during search are within scope of warrant); *United States v. Espinoza,* 641 F.2d 153, 166 (4th Cir.) (same), *cert. denied,* 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981) (same). The "plain view" doctrine requires that the person viewing the premises be there lawfully. *Bills v. Aseltine,* 958 F.2d at 707.

**B.** *Qualified Immunity of CBS and Jorgensen.*

Both CBS and Jorgensen claim qualified immunity. Their argument is that, if they were acting with the permission of government agents, as alleged in the complaint, they should be entitled to the same qualified immunity enjoyed by government officials. The Supreme Court made it clear in *Wyatt v. Cole,* —— U.S. ——, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) that "qualified immunity ... acts to safeguard the government, and thereby to protect the public at large, not to benefit its agents." *Id.* at ——, 112 S.Ct. at 1833.

**III.** *Application Of Law To Facts*

■■■■■ The search warrant was issued to Agent Mottola and other agents of the United States Secret Service for precise and lim-

ited purposes. It authorized their entry into the Ayenis' home only to search for items related to credit card fraud. Agent Mottola's act of facilitating the CBS camera crew's entry into the apartment and its filming of the search exceeded the scope of the warrant. It was allegedly in clear violation of then well established Fourth Amendment principles. For purposes of the instant case, it is the equivalent of a rogue policeman using his official position to break into a home in order to steal objects for his own profit or that of another.

As a Secret Service Agent, Agent Mottola was authorized by law to execute search warrants. 18 U.S.C. ·§ 3056(c)(1)(A). His power was limited by restrictions established by Congress and by the Constitution. The action of Agent Mottola—arguably at this stage in the proceeding—was so far from then well established acceptable constitutional behavior that no case law precedent was needed to alert him to the fact that the execution of a warrant for the benefit of private persons violated the Constitution.

The video pictures taken by the camera crew was a seizure under the meaning of the Fourth Amendment. The complaint does not allege that the CBS crew was aiding the agents in any way. It alleges that the news crew was filming for their own newsgathering purposes, not as part of the authorized search. If this is so, the camera crew was in the Ayeni home unlawfully, in contravention of section 3105 of Title 18 and the Constitution, and, therefore, the filming was a seizure beyond the scope of the warrant. It would be, arguably, grossly unreasonable for a government agent not to have known that the presence of private persons he invited in so that they could titillate and entertain others was beyond the scope of what was lawfully authorized by the warrant.

Based on the facts presently before the court, the defense of qualified immunity cannot be found to be available to shield Agent Mottola from liability. Discovery is required. A motion to dismiss or for summary judgment may be made when the facts are clearer.

CBS had no greater right than that of a thief to be in the home, to "capture" the scene of the search on film and to remove the photographic record. The images, though created by the camera, are a part of the household; they could not be removed without permission or official right.

CBS claims no First Amendment right to be present. The television tape was a seizure of private property, information, for non-governmental purposes.

CBS, as a private corporation, and Jorgensen, as a private individual, are not, on the pleadings, entitled to qualified immunity. Even were they entitled to the same defense as a government official, as already noted, the complaint alleges a violation of a then clearly established constitutional right—precluding a grant of qualified immunity to the official.

The plaintiffs also allege Fifth Amendment violations arising out of the same set of facts. Whether or not plaintiffs have a cause of action under the Fifth Amendment, see Albright v. Oliver, — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), because the case must go forward into a discovery phase on the Fourth Amendment issue, Agent Mottola's claim of immunity from Fifth Amendment claims is also denied with leave to renew after further discovery.

## IV. *Conclusion*

The motion to dismiss is denied. Discovery must be permitted under the control of the magistrate judge. Upon completion of discovery defendants may renew their motion to dismiss and the parties may move for summary judgment.