905 F.Supp. 638 (1995)
Sandra C. PARKER, Individually and as next friend of Dana M. Parker, and Dana M. Parker, Plaintiffs,
v.
Anne-Marie CLARKE, Charles E. Mischeaux, Matthew J. Padberg, Robert T. Haar, Rodney Boyer, Dan Dell, Joseph Richardson, Simon Risk, Terrence Sloan and Multi-Media KSDK, Inc., Defendants.
No. 4:94CV1693-DJS.
United States District Court, E.D. Missouri, Eastern Division.
October 31, 1995.
As Corrected November 6, 1995.
*639 *640 Frank Susman, Susman and Schermer, St. Louis, MO, for Sandra C. Parker and Dana Parker.
Rebecca C. Steward, St. Louis City Counselor Office, St. Louis, MO, for Anne-Marie Clarke, Charles E. Mischeaux, Matthew J. Padberg, Robert T. Haar, Rodney Boyer, Dan Dell, Joseph Richardson and Simon Risk.
Gerald R. Ortbals, Managing Partner, Mary Ann L. Wymore, Greensfelder and Hemker, St. Louis, MO, for Multi-Media KSDK, Inc.

ORDER
STOHR, District Judge.
Plaintiffs, a mother and her 16-year-old daughter, bring the instant action pursuant to 42 U.S.C. § 1983 and Missouri tort law alleging that defendants  four members of the Board of Police Commissioners of the City of St. Louis, five police officers of the St. Louis Metropolitan Police Department ("SLPD"), and the corporate employer of a local television news crew  are liable to plaintiffs for violation of their civil rights and for invasion of privacy. The action arises from the filming of the execution of a search warrant at plaintiffs' residence and the broadcast of the film on the local television news. The matter is now before the Court on the parties' cross-motions for summary judgment.
Count I of the second amended complaint, a § 1983 claim, is pled against defendants Clark, Mischeaux, Padberg and Haar (collectively "the Police Board"), and police officers Boyer, Dell, Richardson, Risk and Sloan, and asserts that the actions of these defendants violated plaintiff Sandra Parker's rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution. Count II is Sandra Parker's state law invasion of privacy claim asserted against police officers Boyer, Dell, Richardson, Risk and Sloan. Count III alleges, pursuant to § 1983, that defendant Multi-Media KSDK, Inc. ("KSDK") violated Sandra Parker's rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments. In Count IV, Sandra Parker asserts a common law invasion of privacy claim against KSDK. Counts V through VIII are analogous to Counts I through IV, respectively, but are asserted on behalf of plaintiff Dana Parker.

Factual Background
For purposes of the instant motions, the following facts are undisputed. On February 9, 1994, at approximately 9:30 p.m., defendants Boyer, Dell, Risk and Sloan, along with officers Mark Franklin, Keith Washington and Tom Huesgen, all members of the SLPD's Mobile Reserve Unit, entered the residence occupied by plaintiffs at 5242 Maple, St. Louis, Missouri, for the purpose of executing a search warrant for cocaine, heroin, weapons, currency and drug transaction records on those premises. The officers were accompanied by a KSDK reporter, Randy Jackson, and camera operator, Jeff McCollum, who rode to the scene in a police car with Officers Boyer and Dell. The *641 KSDK cameraman filmed the execution of the search warrant, including footage in which both plaintiffs appear.
Prior to February 9, Randy Jackson of KSDK had contacted persons assigned to the Mobile Reserve Unit, making them aware that he was interested in pursuing a television news story about law enforcement efforts against illegal weapons. He received a call on the morning of February 9, informing him that a weapons investigation was in progress which he might cover. At about the time of the evening shift's roll call at 6:00 p.m., Sgt. Risk informed Officer Boyer that KSDK personnel would be with Boyer on his shift that night. Sgt. Risk did not know at that time that the warrant for 5242 Maple would be executed that evening. Boyer hoped to execute it that evening, depending on whether he could confirm the presence of the target, Travis Martin, at the address. At approximately 9:00 p.m., Boyer was advised by an informant that Martin was in the house; Boyer then determined to execute the search warrant. The KSDK personnel were not aware until this time that a search warrant was to be executed.
The target of the search warrant, Travis Martin, is a relative of plaintiffs and was then a resident of the house. Martin was detained outside the house before the officers entered to conduct the search. The KSDK personnel entered the house behind the police through the unlocked front door. Two weapons and several substances believed to be cocaine, in both rock and powder forms, were seized during the search. Travis Martin was arrested for controlled substance and firearms offenses, but no charges were ultimately filed against Travis Martin or anyone else as a result of the execution of the search warrant.
The KSDK personnel were not given any instructions or directions by any police officers, and were not advised by them of any limitations on their location, conduct or filming. No defendant sought or obtained plaintiffs' oral or written permission to film during the search or to broadcast any portion of the film. Neither did either plaintiff, any defendant, or any other person ask or direct the KSDK personnel to leave the premises. Later the same night, the KSDK personnel accompanied some of the same officers during the execution of another search warrant in a different residence. All or part of the film shot by KSDK was broadcast on KSDK's local news broadcasts on February 9, February 10, February 11 and May 6, 1994.
Lt. Richardson, then commander of the Mobile Reserve Unit, arrived at 5242 Maple after the search had been executed. In his deposition, Lt. Richardson testified that officers on the scene told him that occupants of the house had given their permission for the KSDK personnel to be present and to film inside the house. Lt. Richardson further testified that it was his policy to exclude the media from the scene of a search unless the scene was "secure" and the media had obtained permission from those involved. On the night of the search, Lt. Richardson assumed that his policy had been complied with, and that the KSDK personnel had entered the house only after the search was concluded and the house secured, and with the permission of the occupants.
In his deposition, Police Chief Harmon indicated that no formal or written policy existed as to media personnel accompanying police in the performance of their duties. Chief Harmon testified that he or an Assistant Chief would screen most such requests by the media, with input from the department's Public Information Office. In evaluating such a request, Chief Harmon's primary concerns are the physical safety of all involved, the potential for interference in police activity, the proposed subject matter of the media report and its potential effect on the public perception of the police. Chief Harmon's testimony indicated his view that it would be the responsibility of the media personnel to obtain from individual citizens any permission necessary in connection with media coverage, but that if such permission had not been obtained, the supervising officer on the scene should not allow the media to enter a residence, on the ground that such an entry would constitute a trespass.

KSDK and The State Action Requirement of § 1983
In order to recover against KSDK under § 1983, as pled in Counts III and VII *642 of the second amended complaint, plaintiffs must demonstrate that KSDK violated plaintiffs' constitutional rights under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). As explained by the Supreme Court in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982):
Careful adherence to the "state action" requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed. A major consequence is to require the courts to respect the limits of their own power as directed against state governments and private interests. Whether this is good or bad policy, it is a fundamental fact of our political order.
Id. at 936-37, 102 S.Ct. at 2753. Lugar provides a two-pronged approach to the state action requirement. First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." Id. at 937, 102 S.Ct. at 2753. Second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id.
KSDK is not alleged to have acted in accordance with a rule of conduct imposed by the State and is not an entity for whom the State is responsible. Accordingly, only the first of the three alternatives of the first Lugar prong appears to have any potential application. KSDK's allegedly unconstitutional conduct  entry into plaintiffs' home and the recording and broadcasting of objects and events inside the home  was not, in the words of Lugar, "caused by the exercise of some right or privilege created by the State." At most, KSDK's acts were committed parallel to and contemporaneous with the police officers' exercise of privileges under state law in the execution of a lawfully obtained search warrant. The first prong of the two-part Lugar test is therefore not met.
A common standard for the application of the second prong of the Lugar test is whether the private party acted as "a willful participant in joint activity with the State or its agents." United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966); see also Murray v. Wal-Mart, Inc., 874 F.2d 555, 558-59 (8th Cir.1989). On the undisputed facts presented in this case, the Court is persuaded as a matter of law that KSDK was not a state actor for purposes of § 1983. The Eighth Circuit has held that private party liability under § 1983 requires "a mutual understanding, or a meeting of the minds, between the private party and the state actor." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir.1993). The record in this case yields no evidence to support such a mutual understanding or purpose on the part of the KSDK personnel and the police officers who conducted the search. The undisputed evidence indicates that the KSDK personnel had been allowed to "ride along" with Mobile Reserve Unit officers during their shift, and that when, in the course of that shift, a determination was made to execute this particular search warrant, the KSDK personnel came along. The passivity of this circumstance demonstrates the absence of any affirmative agreement between KSDK and the police concerning the particular conduct of KSDK which plaintiffs now challenge.
The entirely distinct purposes of the two groups bolster this conclusion, as well as the Court's ultimate determination that the allegedly unconstitutional conduct was not joint. The KSDK personnel were present for the purpose of gathering news and preparing a report for broadcast. The police were engaged in the conduct of law enforcement activity. The police did not participate in the filming of the objects and events in the house,[1] and the KSDK personnel did not participate in the execution of the search. The facts in this case are in this respect easily distinguished from cases in which corporate *643 security guards acted in concert with police in detaining a suspected shoplifter, see Murray supra, in which a corporate security guard was invited to accompany the police in executing a search warrant in a home in furtherance of the corporation's own investigation of the same alleged thefts, Bills v. Aseltine, 52 F.3d 596 (6th Cir.1995), or in which private individuals were alleged to have conspired with law enforcement officials in the commission of vigilante acts, see Price supra. In the Court's view, then, the conduct of the police and of the media personnel in this case were entirely separate and distinct, and cannot be characterized as joint activity. Because the Court concludes as a matter of law that KSDK did not act under color of state law, KSDK will be granted summary judgment as to Counts III and VII of the second amended complaint.

Police Defendants and the Fourth Amendment Claim
Plaintiffs allege that the conduct of the police in allowing the KSDK personnel into their home and allowing them to film inside the home violated plaintiffs' right under the Fourth Amendment to be free from unreasonable searches and seizures. In Ayeni v. Mottola, 35 F.3d 680 (2nd Cir.1994), the Second Circuit confronted similar issues arising from a CBS television crew's accompanying Secret Service agents in the execution of a search warrant in the Ayenis' home. Although Ayeni was an interlocutory appeal of the district court's rejection of the defendant's qualified immunity defense, the court's discussion plainly indicates its view as to the underlying question whether the facts presented a constitutional violation.
The foundation of the Second Circuit's opinion is its observation that:
The protection of privacy from encroachment by governmental officers is the "`principal' object of the [Fourth] Amendment." The home has properly been regarded as among the most highly protected zones of privacy, and "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection."
Id. at 684-85 (citations omitted). After a discussion of the express limitations of the warrant as to both its scope and the persons  i.e., law enforcement officers  authorized by it to conduct any search and seizure, the Second Circuit held that:
Mottola exceeded well-established principles when he brought into the Ayeni home persons who were neither authorized by the warrant to be there nor serving any legitimate law enforcement purpose by being there ... The unreasonableness of Mottola's conduct in Fourth Amendment terms is heightened by the fact that, not only was it wholly lacking in justification based on the legitimate needs of law enforcement, but it was calculated to inflict injury on the very value that the Fourth Amendment seeks to protect  the right of privacy. The purpose of bringing the CBS camera crew into the Ayenis' home was to permit public broadcast of their private premises and thus to magnify needlessly the impairment of their right of privacy.
Id. at 686. For these reasons, the court concluded:
(1) that the Fourth Amendment's prohibition on unreasonable searches forbade Mottola's action in bringing the CBS camera crew into the Ayenis' home, (ii) that the right of the Ayenis to be protected under the Fourth Amendment from an agent's bringing into their home persons not expressly nor impliedly authorized to be there, such as a television camera crew, was "clearly established" at the time of the search, and (iii) that Mottola could not with objective reasonableness have believed that his action was consistent with the Fourth Amendment.
Id.
Upon careful consideration of the facts presented in this case, this Court is persuaded to adopt the reasoning of the Second Circuit in Ayeni, which, although not directly binding on this Court, is a thorough and authoritative consideration of the substantive Fourth Amendment question here at issue. As alluded to earlier, the rationale and conclusions of Ayeni yield not only a determination that the officers responsible for the KSDK personnel's presence in the plaintiffs' home are not entitled to qualified immunity, *644 but yield further the determination as a matter of law that plaintiffs are entitled to summary judgment as to liability on their Fourth Amendment claim under § 1983. The number of defendants in this case requires further consideration as to which officers should be held liable, and whether liability reaches the Board of Police Commissioners.
Individual liability of government officials under § 1983 must be predicated on "a causal connection between the misconduct complained of and the official sued." Harris v. Pirch, 677 F.2d 681, 685 (8th Cir.1982), quoted with approval in Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir.1986). Supervisory personnel are not liable absent "direct responsibility for the improper action" or "personal involvement of the officer being sued." Harris, 677 F.2d at 685 (citations omitted). On the undisputed facts presented by the record, the Court concludes that Officers Boyer and Dell are subject to summary judgment as to liability in plaintiffs' favor. Boyer and Dell were the most directly involved in the determination to allow the media personnel access to the plaintiffs' house during the execution of the warrant. Boyer had obtained the warrant, made the decision when to execute it, and Boyer and Dell together brought the reporter and cameraman to the house in their patrol car. In addition, Sgt. Risk is liable as the supervisory officer who directed Boyer and Dell to allow the KSDK personnel to accompany them on their shift and who was present on the scene to supervise the execution of the search warrant. The facts do not support liability against Lt. Richardson, who was not aware that a search was to be executed or that the media personnel were allowed to accompany the officers executing the search without the occupants' permission, or against Sgt. Sloan, as to whom the facts fail to indicate any direct involvement in the media's presence. The Court will grant plaintiffs partial summary judgment on Fourth Amendment grounds as to individual liability only against defendants Boyer, Dell and Risk on Counts I and V of the second amended complaint. Defendants Richardson and Sloan are entitled to summary judgment on the Fourth Amendment claim asserted in Counts I and V.
To the extent plaintiffs assert any claims against the individual officers in their official capacities, and have asserted claims against the members of the Board of Police Commissioners, plaintiffs seek to impose liability on the City of St. Louis itself. Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985). Such liability is governed by the standards of Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), such that liability can be found "only where the municipality itself causes the constitutional violation at issue." City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (emphasis in original). Plaintiffs could prevail on such a claim by demonstrating that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the City's] officers." Monell, 436 U.S. at 690, 98 S.Ct. at 2035-36. The record is devoid of any evidence that there exists an official policy of the City or its police department to allow media personnel access to private premises in which search warrants are executed.
Neither do plaintiffs present evidence of an unwritten policy or custom allowing the practice. The Eighth Circuit has held that municipal liability on the basis of custom requires "a pattern of `persistent and widespread' unconstitutional practices which became so `permanent and well settled' as to have the effect and force of law." Jane Doe A v. Special School District, 901 F.2d 642, 646 (8th Cir.1990), citing Monell, 436 U.S. at 691, 98 S.Ct. at 2036. Although the deposition testimony of various defendants indicates that media "ride-alongs" with SLPD officers are a fairly common occurrence, there is no evidence of any incidents of media entry into a home, without the occupant's consent, concurrent with the execution of search warrant, other than the two instances on the night here at issue. The present record therefore supports a determination as a matter of law that plaintiffs cannot establish the type of widespread pattern and practice *645 which is a necessary predicate for official liability. Accordingly, the Court will grant summary judgment on the Fourth Amendment claims asserted in Counts I and V to the members of the Police Board and to all other defendants in their official capacities.

§ 1983 Claims Based on the 1st, 5th, 9th and 14th Amendments
In addition to the Fourth Amendment, plaintiffs' § 1983 claims in Counts I and V also allege liability for violations of plaintiffs' rights under the First, Fifth, Ninth and Fourteenth Amendments. The Court agrees with defendants that plaintiffs have not pled facts which could support any liability under the First Amendment. Defendants also correctly point out that the Due Process Clause of the Fifth Amendment applies only to the federal government. See, e.g., Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." The Court readily concludes as a matter of law that the Ninth Amendment affords plaintiffs no distinct cause of action. For the foregoing reasons, the Court will grant all defendants summary judgment on Counts I and V to the extent that they assert claims based on the First, Fifth and Ninth Amendments.
The Court further concludes that all defendants are entitled to summary judgment on plaintiffs' Fourteenth Amendment claim for infringement of their right to privacy. In Holman v. Central Arkansas Broadcasting Co., Inc., 610 F.2d 542 (8th Cir.1979), the Eighth Circuit held that "no right to privacy is invaded when state officials allow or facilitate publication of an official act such as an arrest." Id. at 544. In so holding, the Eighth Circuit cited Paul v. Davis, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1165-66, 47 L.Ed.2d 405 (1976), in which the Supreme Court declined to enlarge the Fourteenth Amendment privacy protection to include a claim that the State may not publicize a record of an official act such as an arrest. More recently, the Eighth Circuit has held that the confidentiality interest which is secured by the Fourteenth Amendment is violated only where the information disclosed is "either a shocking degradation or an egregious humiliation ... to further some specific state interest, or a flagrant breech of a pledge of confidentiality which was instrumental in obtaining the personal information." Alexander v. Peffer, 993 F.2d 1348, 1350 (8th Cir.1993). The facts of this case do not present such a scenario.
The intrusion into the privacy of the home in connection with the search is the focus of the constitutional deprivation alleged in this case, and that focus places the issue more squarely within a Fourth Amendment analysis. As the Second Circuit observed in Ayeni, 35 F.3d at 691, the Supreme Court has explained that where "the Fourth Amendment provides an explicit textual source of constitutional protection against [a particular sort] of physically intrusive governmental conduct, that Amendment, not the more generalized notion of `substantive due process,' must be the guide for analyzing those claims." Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). For these reasons, the Court concludes that plaintiffs' Fourteenth Amendment claim is unavailing, and all defendants are entitled to summary judgment on Counts I and V to the extent that they assert a Fourteenth Amendment claim.

Supplemental Claims under Missouri Law
Counts II, IV, VI and VIII contain each plaintiff's state law tort claims for invasion of privacy, against the individual police officer defendants and against KSDK. Plaintiffs' motion for partial summary judgment indicates that plaintiffs pursue these claims on each of three different privacy theories under Missouri law: intrusion upon seclusion, public disclosure of private facts, and false light publicity. In addition to the plaintiffs' invocation of three distinct theories of tort liability, the state law claims potentially raise issues concerning defenses specially available to the KSDK defendants as members of the press, and to the police defendants based on official immunity.
In view of the Court's disposition of the merits of the claims over which it has original *646 jurisdiction, and in view of the novel and complex issues of state law presented on the facts of this case, the Court declines to exercise supplemental jurisdiction over the state law claims. The factors supporting this determination, as set forth above, are codified in 28 U.S.C. § 1367(c)(1) through (3). For all the foregoing reasons, the Court is persuaded that the state courts are the forum in which the contours of Missouri's privacy torts should be examined for potential application to the unique facts presented by plaintiffs' claims. The Court will therefore dismiss Counts II, IV, VI and VIII without prejudice to their being reasserted in state court.

Conclusion
Following the entry of partial summary judgment in plaintiffs' favor against defendants Boyer, Dell and Risk, the sole remaining question in this case is plaintiffs' damages on their Fourth Amendment claim. All other claims have been disposed of either by dismissal or by summary judgment in defendants' favor. The case remains set on the trial docket commencing November 6, 1995. Accordingly,
IT IS HEREBY ORDERED that plaintiffs' motion for partial summary judgment [Doc. # 46] is granted in part and denied in part.
IT IS FURTHER ORDERED that defendant Multi-Media KSDK, Inc.'s motion for summary judgment [Doc. # 49-1] is granted in part and denied in part, and its request for oral argument [Doc. # 49-2] is denied as moot.
IT IS FURTHER ORDERED that the motion of defendants Clarke, Mischeaux, Padberg, Haar, Boyer, Dell, Richardson, Risk and Sloan to dismiss or in the alternative for summary judgment [Docs. # 47-1 & # 47-2] is granted in part and denied in part.

PARTIAL SUMMARY JUDGMENT
IT IS HEREBY ORDERED, ADJUDGED and DECREED that partial summary judgment on the issue of liability only is entered in favor of plaintiffs and against defendants Rodney Boyer, Dan Dell and Simon Risk, on the Fourth Amendment claim asserted by plaintiff Sandra Parker in Count I of the second amended complaint and by plaintiff Dana Parker in Count V. The issue of damages on these claims remains pending.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that in all other respects, summary judgment is entered in favor of defendants Anne-Marie Clarke, Charles E. Mischeaux, Matthew J. Padberg, Robert T. Haar, Rodney Boyer, Dan Dell, Joseph Richardson, Simon Risk, Terrence Sloan as to the remainder of Counts I and V.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that summary judgment is entered in favor of defendant Multi-Media KSDK, Inc. on Counts III and VII.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that the remaining counts of the second amended complaint, Counts II, IV, VI and VIII are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(1).
NOTES
[1] Police officers were filmed conducting the search and making statements to the KSDK reporter; the police, in addition to the plaintiffs, were subjects of the media's coverage. The record discloses no evidence that the police in any way assisted the KSDK personnel in the newsgathering function other than as subjects.