No. 95-3988
No. 95-4075

Sandra Parker, Individually,      *
and as next friend of Dana M.     *
Parker, and Dana M. Parker,       *
                                  *
        Appellees,                *
                                  *
    v.                            *
                                  *
Rodney Boyer, Dan Dell, and       *
Simon Risk,                       *
                                  *
        Appellants.               *
                                  *
Sandra Parker, Individually,      *
and as next friend of Dana M.     *  Appeals from the United States
Parker, and Dana M. Parker,       *  District Court for the Eastern
                                  *  District of Missouri.
        Appellants,               *
                                  *
    v.                            *
                                  *
Multi-Media KSDK, Inc.,           *
                                  *
        Appellee.                 *
                                  *

Submitted: June 10, 1996

Filed:  August 16, 1996

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD,
    Circuit Judge, and ROSENBAUM,[*] District Judge.

*The HONORABLE JAMES M. ROSENBAUM, United States District
Judge for the District of Minnesota, sitting by
designation.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Sandra and Dana Parker made claims under 42 U.S.C. § 1983 and under state law against police officers who conducted a search of their home. They made similar claims against a television station whose reporting crew entered the house after the police did. The district court granted summary judgment for the Parkers against three police officers on their fourth-amendment claims and granted summary judgment in favor of the television station. In light of the disposition of the federal claims the district court declined jurisdiction over the supplemental state-law claims. See Parker v. Clarke, 905 F. Supp. 638 (E.D. Mo. 1995). The three police officers and the television station appealed to this court. We reverse, on grounds of qualified immunity, the district court's finding of liability against the officers. We affirm the district court's judgment in favor of the television station because the reporting crew was not acting under color of state law when it entered the Parkers' house.

I.

We will summarize the district court's findings of fact, with which the parties seem to have no dispute. A reporter from KSDK, a television station in St. Louis, contacted the St. Louis police and told them that he was interested in developing a television news story about the police department's efforts to eradicate illegal weapons. Sometime later, the police told the reporter that a weapons investigation was in progress that he might be interested in covering. The investigation centered on the activities of one Travis Martin, a man who resided in a house in which Sandra and Dana Parker also lived. Sgt. Simon Risk later informed Officer Rodney Boyer that KSDK personnel would accompany him on his shift that night, and KSDK personnel rode to the scene in a police car with Officer Boyer and Officer Dan Dell. After detaining Mr. Martin outside, Sgt. Risk and six other officers, including Boyer and Dell, executed the search warrant at the Parkers' residence.

They entered through an unlocked front door, and the KSDK personnel followed the police into the house. Although the police discovered two weapons and several substances believed to be cocaine, no charges were filed against Mr. Martin or anyone else as a result of the search. KSDK broadcast the tapes that it made at the Parkers' residence on several news programs.

As the district court noted, the police did not give the KSDK personnel any instructions or directions before the search, nor did the police impose any limitations on their conduct. Neither the police nor KSDK personnel sought or obtained the Parkers' permission to videotape the search or broadcast the resulting videotape. The district court also noted that the chief of police testified that his department's policy was to require the media to obtain permission to videotape private citizens whose houses were being searched. If such permission had not been obtained, he testified, the supervising officer on the scene was not supposed to allow the media to enter a private residence, because, the chief believed, such an entry would constitute a trespass.

II.

We deal first with the Parkers' claims against the police officers.

Government officials are entitled to qualified immunity from suit for civil damages if their conduct does not violate clearly established federal rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Jones v. Coonce, 7 F.3d 1359, 1362 (8th Cir. 1993). The issue here is whether reasonable police officers would have known that permitting a television crew to enter a house during the execution of a search warrant would violate a clearly established fourth-amendment right. Though we have no case on point, and the Supreme Court has not provided specific guidance on the question, most courts have rejected the argument that the United States Constitution forbids

-3-

the media to encroach on a person's property while the police search it. <u>Avenson v. Zegart</u>, 577 F. Supp. 958 (D. Minn. 1984); <u>Moncrief v. Hanton</u>, 10 Med. L. Rptr. 1620 (N.D. Ohio Jan. 6, 1984); <u>Higbee v. Times-Advocate</u>, 5 Med. L. Rptr. 2372 (S.D. Cal. Jan. 9, 1980); <u>Prahl v. Brosamle</u>, 98 Wis.2d 130, 295 N.W.2d 768 (Wis. Ct. App. 1980). On the other hand, a recent case held that clearly established constitutional law forbids the police to permit the media to enter a home during a search. <u>Ayeni v. CBS, Inc.</u>, 848 F. Supp. 362 (E.D.N.Y. 1994), <u>aff'd</u>, <u>Ayeni v. Mottola</u>, 35 F.3d 680 (2d Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1689 (1995); <u>see also</u> <u>Buonocore v. Harris</u>, 65 F.3d 347 (4th Cir. 1995) (clearly established constitutional law prohibited police from bringing a telephone company employee into a home to conduct an independent general search for items not identified in any warrant).

In assessing claims of qualified immunity, we are of course required to examine the state of the relevant law at the time the officials committed the acts of which the plaintiffs complain. <u>Harlow</u>, 457 U.S. at 818-19; <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985). Because both <u>Ayeni</u> and <u>Buonocore</u> were decided after the police in this case executed their search, those cases cannot weigh in the balance against a finding of qualified immunity. Even if we believed that those two cases were entitled to consideration, they would appear to us to indicate at most only the beginnings of a trend in the law. Nor do we think it self-evident that the police offend general fourth-amendment principles when they allow members of the news media to enter someone's house during the execution of a search warrant. Accordingly, we cannot say that the kind of conduct in which police engaged in this case was a violation of a clearly established constitutional principle of which the police, at the time they executed their search warrant, should have been aware. The district court therefore erred in concluding that the police officers did not enjoy qualified immunity.

III.

We turn now to the Parkers' claims against KSDK.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power `possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)); Gentry v. City of Lee's Summit, 10 F.3d 1340, 1342 (8th Cir. 1993).  The requirement of state action in suits for alleged deprivation of civil rights "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982).  The injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible.  Id. at 937.  The Parkers appear to argue only that KSDK exercised a right or privilege created by the state when they entered the house.

It is undisputed that KSDK acted independently of the police in deciding to enter the house and videotape the events there and that neither KSDK nor the police assisted the other in the performance of their separate and respective tasks.  The KSDK personnel did not execute the search warrant and they entered the house after the police did.  The television station was there for reasons of its own and was engaged in a mission entirely distinct from the one that brought the police to the house.  Seizing an opportunity to trespass is not the same as invoking a right or privilege.  We agree with the district court that "[a]t most, KSDK's acts were committed parallel to and contemporaneous with the police officers' exercise of privileges under state law in the execution of a lawfully obtained search warrant," 905 F. Supp. at 642, and that KSDK was not exercising a right or privilege created by the state when it decided to enter the Parkers' home to record

-5-

the events taking place there.  KSDK's entry into the Parkers' house and videotaping the events that occurred there was therefore not an act committed under color of state law.  See Lugar, 457 U.S. at 936.

IV.

For the foregoing reasons, we affirm the judgment of the district court in part, reverse it in part.

ROSENBAUM, District Judge, concurring specially.

I join the Court's opinion, but write separately to address the constitutional question underlying the issue of qualified immunity.  In my view, our jurisprudence demands a first determination of whether the claimed constitutional right, in fact, exists.  We have missed this required first step in the qualified immunity analysis.

This court has consistently ruled that, "[i]n order to determine whether a defendant is entitled to qualified immunity, we engage in a two-part analysis."  Manzano v. South Dakota Dep't of Social Servs., 60 F.3d 505, 509 (8th Cir. 1985) (citing Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1985)); see also Siegert v. Gilley, 500 U.S. 226, 231-32 (1991).  "First, we must determine whether the plaintiff has alleged the violation of a constitutional right."  Manzano, 60 F.3d at 509.  In my view, we have neglected this determination.  It is not until we have made this required decision that we analyze whether such right was clearly established at the time of its alleged violation.  Manzano, 60 F.3d at 509.

I would find, consistent with Ayeni v. Mottola, 35 F.3d 680, 686 (2d Cir. 1994), cert. denied, 115 S. Ct. 1689 (1995), that police officials executing a search warrant violate a resident's Fourth Amendment rights, when they admit representatives of the

public media into a private citizen's home, without first securing the resident's express consent.

Having recognized this right, I would join the court and determine these officers did not violate a constitutional right which was clearly established at the time they allowed the television news crew to enter the Parkers' home.

RICHARD S. ARNOLD, Chief Judge, concurring in part and dissenting in part.

I join all but part III of the Court's opinion. With respect to the issue decided in that portion of the opinion, having to do with whether KSDK's employees were state actors for purposes of 42 U.S.C. § 1983, I respectfully dissent. In my view, the news crew acted in concert with the police in entering the Parkers' home. They were "'willful participants[s] in joint activity with the State or its agents . . ..'" Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970), quoting United States v. Price, 383 U.S. 787, 794 (1966). The news crew came to the location with the police and could not have entered if the police had not done so first. They did not simply happen along the street at the time that a search was being conducted.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-